[Civ. No. 49088. Second Dist., Div. Five. Aug. 16, 1977.]

CHARLOTTE HARRINGTON et al., Plaintiffs and Appellants, v.
MARIO OBLEDO, as Secretary, etc., et al.,
Defendants and Respondents.

706

**COUNSEL**

Daniel M. Luevano, Rosalyn M. Chapman, John E. McDermott, Antonia Hernandez, Philip L. Goar and Bruce K. Miller for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, N. Eugene Hill and John J. Klee, Jr., Assistant Attorneys General, Ronald V. Thunen, Jr., Anne S. Pressman, Thomas E. Warriner and Janet G. Sherwood, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**KAUS, P. J.**—Petitioners and appellants are former welfare recipients who until January 1, 1974, were entitled to welfare benefits under then existing federal and state assistance programs. Petitioner Harrington, 63 years of age, was a recipient of aid to the totally disabled (ATD) from October 1973 until May 1974. Petitioner Cruz, 70 years old, was a recipient of old-age assistance (OAS) from 1970 until December 1974. The welfare program was changed so that petitioner Harrington could not meet the new federal definition of "disabled," and petitioner Cruz could not meet the federal eligibility requirements for aliens. Both petitioners are now receiving county general relief payments.

■ The chief issue in this case is the meaning of Welfare and Institutions Code section 12151. Petitioners contend that section means that welfare recipients under the old federal and state welfare program are entitled to benefits under the new program, even though such former recipients do not meet the stricter eligibility standards under the new program.

We conclude that petitioners are correct in part: That the Legislature first adopted a law that would, consistent with new federal law, continue formerly eligible recipients, but that when the new federal law was amended, the Legislature failed to change our law to fully conform to federal law, leaving a class of persons, including petitioner Harrington, eligible to receive state benefits, because they had received welfare benefits the month before the new federal-state program took effect.

BACKGROUND[1]

Under the former provisions of the federal Social Security Act (42 U.S.C. § 301 et seq., § 1201 et seq., § 1351 et seq.), the federal government participated in state adult welfare programs through grants-in-aid to the states. In October 1972, Congress enacted Public Law No. 92-603, to be effective January 1, 1974 (Pub.L. No. 92-603, § 301) which changed the system so that payments would be made directly to the recipients, rather than to the states. (42 U.S.C. § 1383.) The standards of eligibility were also changed (42 U.S.C. § 1382c) so that certain persons, including petitioner Harrington, would not be eligible for benefits under the new federal program.[2]

However, Congress grandfathered in blind and disabled recipients—the standards for the aged were not changed—provided such recipients had received aid in *December 1973* under a state plan in effect in October 1972. (Pub.L. No. 92-603, § 301, amending Social Security Act, § 1614(a)(2), (a)(3); 86 Stat. 1471-1472.)

To receive federal funds, California was required to fashion a program in compliance with the new federal legislation. During the 1973 legislative session, four separate bills, including Assembly Bill No. 134, were introduced for the purpose of conforming California law to federal

---

[1]We have borrowed liberally from the recitals in *California League of Senior Citizens, Inc.* v. *Brian* (1973) 35 Cal.App.3d 443 [110 Cal.Rptr. 809].

[2]Petitioner Cruz' eligibility is affected only because she is an "illegal alien," a matter discussed separately.

requirements. None of the bills passed. Near the end of the 1973 legislative session, the Department of Social Welfare drew up regulations in lieu of legislation to conform to federal requirements.

In *California League of Senior Citizens, Inc.* v. *Brian, supra,* 35 Cal.App.3d 443, persons purporting to represent welfare recipients challenged the California regulations as illegal. The petitioners prevailed, leaving this state with no law, however created, which conformed to the new federal law.[3]

*Brian* was decided on November 19, 1973. The new federal system would take effect, as noted, January 1, 1974. The effect on the Legislature was spectacular. On December 5, 1973, Assembly Bill No. 134 was revised, amended in conference, captioned urgency legislation, adopted, enrolled, sent to the Governor, approved and chaptered.

The details of Assembly Bill No. 134 fortunately do not concern us, except for the enactment of a new Welfare and Institutions Code section 12151. This section read as of December 5, 1973: "Persons who for the month of *December 1973* were recipients of aid or who had applied for and met all the eligibility conditions for aid under" the former state legislation "shall be eligible for benefits . . . during the period that they continue to meet the more liberal of the eligibility requirements in effect in December 1973 or after January 1, 1974." (Italics added.)

Then, less than a month later, on December 31, 1973, Congress amended the 1972 grandfather clause to provide that the recipient must have received aid *in December 1973* under a plan in effect in October 1972, *and* received such aid *"for at least one month prior to July 1973 . . . ."* (Pub.L. No. 93-233, § 9; 87 Stat. 957; Social Security Act, § 1614(a)(3)(E); 42 U.S.C. § 1382c (a)(3)(E).) This language excluded all recent and last-minute enrollees, including petitioner Harrington, who did not start to receive aid until October 1973.

On March 14, 1974, the Legislature amended section 12151 as urgency legislation (Stats. 1974, ch. 75, § 18, p. 171) with a statement that the act should apply retroactively to January 1, 1974, to the extent that it "may legally do so." (P. 171, § 17.) This case arises chiefly because the

---

[3]The effect of the court's decision was that no welfare payments at all could be made. Petitioners in *Brian,* apparently recognizing that they had won the battle but were about to lose the war, asked the court to permit federal administration "as an interim measure," a request that the court found itself powerless to grant. (35 Cal.App.3d 443, at pp. 456-457.)

Legislature did not track the language of Public Law No. 93-233, section 9, or refer to that law, or to section 1614(a) of the Social Security Act or to 42 United States Code section 1382c(a). Instead, the Legislature added to section 12151 the following proviso: "Persons . . . shall be eligible for benefits . . . [if] they continue to meet the . . . requirements in effect in December 1973 . . . *provided that no person shall remain eligible under this section who would otherwise be ineligible to receive state supplemental payments by reason of the provisions of Section 212(a)(2)(C) or (D) of Public Law 93-66,* or Section 1611(e)(1)(A), (2), or (3), 1611(f), or 1615(c) of Title XVI of the Social Security Act." (Italics added.)

The specifics of the references to sections 1611 and 1615 of the Social Security Act do not directly concern us.[4] The reference to Public Law No. 93-66 provides the basis for petitioners' argument.

In 1973, Congress in Public Law No. 93-66 had further amended the Social Security Act to require the state to provide supplementary payments to residents who qualified for federal payments by conditioning federal participation on the state's making provision for such supplementary payments. (See *Brian, supra,* 35 Cal.App.3d at p. 446.) The state may also choose to pay an optional supplement to federal recipients. (Pub.L. No. 92-603, § 301; 86 Stat. 1474; Social Security Act, § 1616; 42 U.S.C. § 1382e.) California provides for both mandatory supplements (Welf. & Inst. Code, §§ 12200-12205.2) and for optional supplemental payments (Welf. & Inst. Code, §§ 12500-12553).

## DISCUSSION

Petitioners' contention is based on the significance of the reference in Welfare and Institutions Code section 12151 to federal law. That section has two different types of references: one, to a public law (Pub.L. No. 93-66) and the second, to the Social Security Act. The section disqualifies persons who would be ineligible to receive state supplemental payments "by reason of . . . Public Law 93-66, or section 1611 . . . of the Social Security Act."

---

[4] The section references are to a collection of categories: An inmate of a public institution (Social Security Act, § 1611(e)(1)(A); 42 U.S.C. § 1382(e)(1)(A)). One who fails to apply for other assistance (§ 1611(e)(2); 42 U.S.C. § 1382(e)(2)). A drug addict or alcoholic who refuses appropriate treatment (§ 1611(e)(3); 42 U.S.C. § 1382(e)(3)). A person outside the United States for a month (§ 1611(f); 42 U.S.C. § 1382(f)). A person who refuses appropriate vocational rehabilitation (§ 1615(c); 42 U.S.C. § 1382d(c)).

Petitioners assert that the Legislature, by referring to a specific public law—rather than to the Social Security Act or the United States Code—intended to fix eligibility based on the standards in effect when Public Law No. 93-66 was enacted—that is, the grandfathered liberal standards of Public Law No. 92-603—rather than under the standards established by later amendments to the Social Security Act (e.g., Pub.L. No. 93-233). Thus, all persons receiving welfare benefits in December 1973 under the then-existing standards could be continued.

We think petitioners' argument is good. Assuming, as the department contends, that the purpose of the legislation was to conform California law to federal law, it would have been a simple matter to disqualify all persons who did not meet the standards of eligibility set forth in 42 United States Code section 1382c(a) or section. 1614 of the Social Security Act. Instead, this is what happened.

Section 212 of Public Law No. 93-66 deals with eligibility for mandatory minimum state supplements under the federal benefits program. Our Legislature referred to subparagraph (C)—dead persons —and subparagraph (D), which provides that persons will be entitled to receive supplementary state payments until "the first month in which such individual ceases to meet the condition specified in subparagraph (A). . . ." Subparagraph (A), in turn, refers to persons who are "aged, blind or disabled . . . (within the meaning of section 1614(a) of the Social Security Act, *as enacted by section 301 of the Social Security Amendments of 1972*), . . ." (italics added)—which encompasses the grandfather clause to which we have referred.

Thus, we are led back to a section reference limited to a specific point in time: 1972, or Public Law No. 92-603, which, as noted, contained the grandfather clause.

The parties agree on the general rule: " '[W]here a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary. [Citations.]' " Where, however, " 'the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . .' " (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].)

We recognize that, from the chronology of events, it may have been the Legislature's intention merely to track the Social Security Act, and to provide state payments only to those persons who qualified for federal payments. Our interpretation of the statute leaves a group of persons who are not eligible for federal payments and to whom the federal government does not require that the state pay welfare benefits—or risk the penalty of a cutoff of federal aid—but whom the Legislature undertook to support in part. Yet, if the legislative intent was to do no more than federal law required—not really true in any event, since California, as noted, makes optional supplemental payments—what the Legislature did in amending section 12151 would make no sense. Why refer to section 212 of Public Law No. 93-66—a statute fixed in time—which, in turn, refers to the "Social Security Amendments of 1972"—another statute fixed in time?

Although the last-minute amendments by Congress probably precluded careful consideration by our Legislature, we cannot assume that it did not notice that a reference to Public Law No. 93-66 was fraught with danger because the restriction on the grandfather clause to which the Legislature responded was contained in Public Law No. 93-233. In short, we conclude that, for whatever reasons, the Legislature in amending Welfare and Institutions Code section 12151, undertook the obligation of paying state welfare benefits to all those persons who were qualified to and did receive such benefits in December 1973, under the standards then in effect.

*Alienage*

Petitioners' final contention relates only to petitioner Cruz, who was disqualified from participation in the federal program because she does not meet the federal requirements governing welfare payments to aliens. Petitioner concedes that she does not meet current federal standards governing alien eligibility for welfare assistance; however, since the federal share is not involved in this case, the only issue is whether, assuming either petitioner would be entitled to state benefits, petitioner Cruz is eligible under California law governing alien eligibility for welfare benefits.[5]

---

[5]In April 1977, we addressed a letter to respondent, seeking clarification of its position with respect to petitioner Cruz. In particular, we inquired whether it was the department's contention that the phrase "color of law" in 42 United States Code section 1382c(a)(1)(B) means something different than the standard in section 11104 of the Welfare and Institutions Code, *infra*. Respondent replied as follows: "The Department has made no contention as to the meaning of 'color of law' as contained in 42 U.S.C. 1382c(a)(1)(B) in relation to section 11104. Any such contention goes beyond the scope of the issues as specified in the Agreed Statement." Therefore, nothing in this opinion shall be read as an attempt to construe the precise meaning of that phrase in the federal statute.

The department contends that Cruz is disqualified under Welfare and Institutions Code section 11104. We disagree. That section provides as follows:

"Any alien . . . otherwise qualified for aid shall be eligible to receive public assistance if he certifies under penalty of perjury that . . . he is in the country legally . . . *or if he certifies that he is not under order for deportation. . . .*

"Such certification . . . shall . . . be forwarded to the United States Immigration and Naturalization Service for verification. *Aid shall continue pending verification.*

"If an alien has been residing in the United States continuously for five years or more . . . the affidavits of two U.S. citizens attesting to such continuous residence by the alien shall constitute a rebuttable presumption that the alien is entitled to be in the country for purposes of determining eligibility." (Italics added.)

Ms. Cruz certified under penalty of perjury that she was not under a deportation order. Pending verification she was entitled to receive aid. Concededly, the Immigration and Naturalization Service has never advised the department that she is under a deportation order. Under the clear language of section 11104 "aid shall continue."

The department argues that the certificate that Ms. Cruz is not under a deportation order merely creates a rebuttable presumption of eligibility and that the presumption was rebutted by the admitted fact that the Social Security Administration determined that she does not meet current federal eligibility requirements. (See 42 U.S.C. § 1382c(a)(1)(B).) Section 11104 is, however, quite specific: a certificate that the recipient is not under an order for deportation entitles him or her to aid pending "negative" verification from the Immigration and Naturalization Service. The department's interpretation apparently substitutes an administrative decision by the Social Security Administration for the statutory requirement.

The judgment is reversed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied September 14, 1977, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied October 20, 1977.